### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | **A-12-CR-210SS** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MIGUEL ANGEL TREVINO et. al** | § | |
| | § | |
| **Defendants.** | § | |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE FOR <u>BRUTON OBJECTION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the United States of America, by and through the United States Attorney for the Western District of Texas, and files this Response to the Defendants' Motions in Limine for Bruton Objection (Documents 352 & 355), and would show the Court as follows:

There are a number of statements which the government will seek to offer into evidence in this case which are admissible under *Federal Rules of Evidence* 801(d)(2)(E) as co-conspirator statements. There are also a number of statements which the government will seek to offer into evidence which are admissible under *Federal Rules of Evidence* 801(c)(2) or 801(d)(2)(A).

### <u>A. Background.</u>

In her motion, the Defendant, Zulema Trevino, refers to a "chat log" created by the Defendant Alexandra Trevino (Attachment A). This chat log was discovered after a forensic analysis of a computer seized at the Trevino residence in Balch Springs, Texas on June 12, 2012. In this chat log, Alexandra Trevino is engaged in an online conversation with her then boyfriend. The pertinent portions read:

**alexandratrvn**
can i tell you something

1

**The love of my life!**
Yes

**alexandratrvn**
we got it made if this business goes good. my dad finally got a company going and made his will leaving us as the first ones to get everything and put me in charge of  handling finances and something else.. because he said i have a good head on my shoulders and he trust me.. idk he told me not to go to school the other day... its weird... but i just wanted to put that out there....  idk how you feel about all this

**alexandratrvn**
but i think its a good thing.

**The love of my life!**
I can run a buisness

**alexandratrvn**
baby! i want you to be involved! the more your involved the awesomer its going to be!

**alexandratrvn**
idk people in our family are mad
**alexandratrvn**
saying that licha should of gotten this.. becasue she needs a break.. and yea.. she has NEVER worked!
**alexandratrvn**
they gave her her house!
**alexandratrvn**
her truck
**alexandratrvn**
and basically everything!
**alexandratrvn**
idk i think they choose the right family to give this business to. i know my family isnt perfect but we are hard workers.

       Additionally, many of the Defendants made post-arrest statements, after being provided

their *Miranda* warnings on June 12, 2012 at various locations throughout the United States, that

the Government intends to offer. (See agent summaries of verbal statements as Attachments 2-7).

**B. Analysis**

"[T]he right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment." *Bruton v. United States,* 391 U.S. 123(1968). Where an out-of-court statement by a non-testifying codefendant is admitted, the defendant inculpated by the statement is denied the opportunity to cross-examine his codefendant, thus leaving the reliability of the codefendant's statement untested. Therefore, the inculpated defendant is denied his constitutional right to confront the witnesses against him. *Id.* At 127.  The Supreme Court held that a curative instruction for the jury to consider an inculpatory statement only in determining the confessing codefendant's guilt, rather than that of the non-confessing inculpated defendant, does not cure the Sixth Amendment violation. *Id.* at 131.

There are two well-established exceptions to the *Bruton* rule, however. First, *Bruton* is not applicable to a statement that falls within certain "firmly rooted hearsay exception[s]." *Ohio v. Roberts,* 448 U.S. 56, 66, (1980); *see also United States v. Saks,* 964 F.2d 1514, 1525 (5th Cir.1992). For example, in *Saks,* the Fifth Circuit held that Federal Rule of Evidence 801(d)(2)(D), the agency exception, was one such "firmly rooted" exception, and identified other "firmly rooted" hearsay exceptions that qualify as *Bruton* exceptions, viz. **the hearsay exception for co-conspirators provided in Rule 801(d)(2)(E),** the "spontaneous declaration" exception, and the "medical examination" exception. *Saks,* 964 F.2d at 1525 (emphasis added).

The second exception is that *Bruton* only applies to out-of-court statements that are "facially incriminating." *Richardson v. Marsh,* 481 U.S. 200, 209, (1987). Therefore, for a *Bruton* violation to occur, the codefendant's statement must *directly* implicate the defendant. Where the reference to the defendant is indirect and the jury can only complete the inference by relying on

other evidence in the trial, *Bruton* will not apply. *United States v. Walker,* 148 F.3d 518, 522-23 (5th Cir.1998) (where reference to the defendant is as "the man with the sack," the reference was not sufficient to trigger a *Bruton* violation); *see also United States v. Barrandey*, 481 Fed.Appx. 221, 224 (5th Cir. Jul 26, 2012).

### 1.   Chat Log and other co-conspirator statements

With respect to the "chat log," in the Fifth Circuit, the proponent of admittance under Rule 801(d)(2)(E) must prove by a preponderance of the evidence: (1) the existence of a conspiracy; (2) membership in the conspiracy by the declarant and the defendant; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. *United States v. Robinson*, 367 F.3d 278, 291–92 (5th Cir. 2004). The use of the co-conspirator exception is restrained only by these requirements.  However, neither the witness nor the declarant for whom the offering party seeks to take advantage of the co-conspirator exception needs to be indicted for conspiracy.  *United States v. Asibor*, 109 F.3d 1023, 1033 (5th Cir. 1997) (affirming the admission of a co-conspirator's statements over the objection that the co-conspirator had not been indicted).

The offering party must prove these requirements by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).  When making preliminary findings of admissibility, the court is not bound by the rules of evidence except those with respect to privileges. Fed.R.Evid 104(a)(2011).  Thus, limited only by the rules of privilege, the trial judge may consider any evidence whatsoever, including the proffered hearsay statements, in determining whether statements are admissible under the co-conspirator exception to the hearsay rule. *Bourjaily*, 483 U.S. at 175.

Statements admitted under the co-conspirator exception must be made during the course of the conspiracy.  The course of the conspiracy extends, at least, from the time of agreement underlying the conspiracy until the ends of the conspiracy are carried out.

The Fifth Circuit has found that statements of the defendant's co-conspirators before the defendant's membership in the conspiracy do not fall outside the scope of the conspiracy merely because of the defendant's noninvolvement at the time of the statements. *United States v. Rocha*, 916 F.2d 219, 239–240 (5th Cir. 1990).  In the *Rocha* case, the court admitted statements made by the defendant's eventual co-conspirators before the defendant's involvement in the conspiracy, "since there was evidence of [the defendant's] subsequent knowledge and willingness to participate in the conspiracy." *Id.* at 240.  Thus, the defendant's membership in the conspiracy and the statements seeking admission under the co-conspirator exception need not coincide to meet the scope requirement.

The "'in furtherance of the conspiracy' is not to be construed too strictly lest the purpose of the exception be defeated." *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996). An "overly literal interpretation" of the phrase is to be avoided.  *Id.* at 1039.  Thus, "'in furtherance' of a conspiracy can take many forms, including statements seeking to control damage to an ongoing conspiracy and statements made in an attempt to conceal the criminal objectives of the conspiracy."  *Id.*  The Fifth Circuit has gone so far as saying that "statements which are puffing or boasts, but which are used to obtain the confidence of the person toward whom the statement is directed, are properly considered to be statements in furtherance of the conspiracy." *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989).

Explanatory statements involved in a conversation between conspirators concerning the arrest of a third conspirator was deemed in furtherance of the conspiracy, as it "concerned a

significant event that threatened the existence of the conspiracy. . . . [and therefore] implicitly involve[d] how best to avert damage to the ongoing drug conspiracy." *Broussard*, 80 F.3d at 1039.

Courts have admitted statements of (1) a witness that (2) a co-conspirator told him that (3) another co-conspirator defendant said or did something which was in furtherance of the conspiracy. When these statements refer to acts of co-conspirators they generally fit within the previously mentioned categories pertaining to co-conspirator information explaining events and identifying roles of other co-conspirators. Thus in *United States v. Flores*, the Fifth Circuit noted that: "statements keeping others abreast of conspiracy's status is in furtherance." 985 F.2d 770, 780 (5th Cir. 1993).

In summary, and in addition to other  co-conspirator statements the government intends to introduce, the statement of Alexandra Trevino described above is an admissible statement per Fed.R.Evid 801(d)(2)(E) as an exception to *Bruton*. The Government has alleged that the conspiracy began in 2008 and involved the use of drug proceeds to purchase and manage quarterhorses. Further, the discussion in the chat log identifies Alexandra Trevino's and others participation after commencement in the conspiracy. Not only does that statement identify her role in the conspiracy to another but also identifies the source of the income for the quarterhorse business. These type of statements are generally held to be in furtherance of the conspiracy. *United States v. Green*, 180 F.3d 216, 223 (5th Cir. 1999). Finally, this statement by Alexandra Trevino to her boyfriend explicitly and unambiguously solicits his participation in the conspiracy and is thus in furtherance in order to maintain her and her boyfriends continued participation.

### 2. Bruton Statements

With respect to the post-arrest statements, in a joint trial, where the out-of-court statement of a non-testifying defendant is admitted as evidence against the defendant himself, trial courts cure any potential Sixth Amendment violation by instructing jurors to consider the statements only against the defendant who made them and not against the other defendants. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). However, in a line of cases stemming from *Bruton v. United States*, the Supreme Court has recognized that such instructions may not cure the Sixth Amendment violation when the statement is "powerfully incriminating," in the sense that it expressly, or facially, implicates another defendant. 391 U.S. 123, 135-36 (1968).

A statement is powerfully incriminating, and, thus, inadmissible under the *Bruton* line of cases, if a jury could readily infer from the statement as a whole that it inculpates the defendant. *United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999).

In this instance, none of the attached statements directly implicates any of the other co-defendants in any criminal activity with one exception. The post-arrest statement of Defendant Raul Ramirez implicates Defendants Fernando Garcia and Carlos Nayen as members of the Zeta organization. As such, the Government will instruct its agents not to mention this portion of Defendant Ramirez's statement. All of the Defendants deny involvement or knowledge in any conspiracy involving the Zeta Drug Trafficking Organization. All of the Defendants make the claim that they are merely involved in the business of training, racing and breeding American quarterhorses. To some extent, many of the Defendants acknowledge knowing other co-defendants in a professional business relationship rather than in any criminal activity. It is the Government's contention that these statements contain many falsehoods that will be proven by other evidence solicited at trial.

By way of example, through the testimony of Special Agent Billy Williams, the United States will offer post-arrest statements made by non-testifying defendant, Fernando Garcia, on February 12, 2012. Special Agent Williams will testify that Garcia denied that the horses he managed belonged to Los Zetas cartel; that he denied knowing "40" and "42," Miguel Trevino-Morales, Omar Trevino-Morales, Victor Lopez, and Alfonso Del Rayo Mora; and that he asserted that he had only legitimate dealings or no dealings at all with Carlos Nayen, Sergio Rincon, Eusevio Huitron, Felipe Quintero, Adan Farias, Raul Ramirez Jr., and Luis Gerardo Aguirre.

Thus, under the *Bruton* rationale, this statement and the others are not powerfully incriminating in that they only inferentially incriminates a defendant when linked to other evidence introduced at trial. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987). The Supreme Court held that the co-defendant's statement was not powerfully incriminating because the jury could only infer that the defendant had knowledge of the planned murder by linking the statement with other evidence. *Id*. The Court reasoned that in cases where inferences against a defendant require linking a co-defendant's statement with separate pieces of evidence, a jury is more likely to be able to follow the instruction to disregard the statement. *Id*.; *see also United States v. Harper*, 527 F.3d 396, 406 (5th Cir. 2008) (holding that the admission of co-defendant's statements was not a *Bruton* violation because the statements did not directly or obviously implicate the defendant until other evidence was introduced).

The Fifth Circuit has interpreted the *Richardson* rationale to apply to statements that explicitly name the defendant but incriminate him only if the jury draws certain inferences from other evidence. *United States v. Lage*, 183 F.3d 374, 387-88 (5th Cir. 1999) (holding that a proper jury instruction could prevent a *Bruton* violation where the co-defendant's statements put

the other defendant at the scene of the crime just before and just after it happened, but the jury would have to infer that the defendant was present and participated in the crime itself).

The most significant characteristic of these statements in this case is their non-inculpatory, innocent nature. Not one of them incriminates any other Defendant. To the contrary, the content of the offered statements exculpates all of the Defendants and contradicts the government's claims of an illegal Los Zetas based money laundering scheme.

If the statements only inferentially incriminate another defendant when linked to other evidence introduced at trial, a Sixth Amendment violation can be avoided by instructing the jury to consider the co-defendant's statements only against the co-defendant and not against the other defendants. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

For example, although Garcia's statements explicitly name other defendants, the statements are admissible because they do not facially implicate the other defendants in criminal wrongdoing. Without other evidence, Garcia's statements that he did not know or that he only had minimal dealings with these defendants do not implicate any defendant in any crime. In order to construe this evidence as incriminating, jurors would have to conclude from other evidence introduced at trial that Garcia was lying in his statements to law enforcement and, furthermore, infer from that conclusion that his lies were circumstantial evidence of his and the other defendants' guilt.

In fact, the Government contends that these statements do not constitute hearsay.  A statement is hearsay if it is offered "in evidence to prove the **truth** of the matter asserted in the statement." Fed. R. Evid. 801(c)(2)(emphasis added).   In *Tennessee v.* Street, the Supreme Court distinguished the difference between a hearsay statement per *Bruton* and the Government's use of a confession in rebuttal as non-hearsay.  471 U.S. 409, 414 (1985); *see also, Martinez v.*

*McCaughtry,* 951 F.2d 130, 133 (7th Cir. 1991)("it is well-established that '[w]here statements

are admissible because they are not hearsay, there is no confrontation clause problem.').[1]

## C.  Conclusion

WHEREFORE, PREMISES CONSIDERED, the United States respectfully requests that

the Defendants' Motions in Limine (Documents 352 & 355) be denied.

Respectfully Submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

DOUGLAS GARDNER
Assistant U. S. Attorney
Texas State Bar No. 24007223
816 Congress Avenue, Ste.1000
Austin, Texas 78701
A/C 512/916-5858; FAX 512/916-5854

---

[1]Other circuits have agreed with the contention that only "facially incriminating" statements are disallowed. *See e.g. United States v. Angwin,* 271 F.3d 786, 796 (9th Cir. 2001)( A statement is not facially incriminating merely because it identifies a defendant; the statement must also have a "sufficiently 'devastating' or 'powerful' inculpatory impact to be incriminatory on its face."); *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989); *United States v. Abramson,*54 F.Supp.2d 479, 480 (D.Virgin Islands,1999)(The most significant characteristic of these statements is their non-inculpatory, innocent nature. Not one of them incriminates either [co-defendant]. To the contrary, the content of the statements exculpates both [co-defendants] and contradicts the government's claims of illegal activity.); *United States v. Sherlin,*67 F.3d 1208, 1216 (6th Cir. 1995)("[T]he point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false.").

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Government's Response has been delivered

via electronic noticing on the 17th day of March 2013, to:

Mr. David Finn(3)
Attorney at Law

Mr. Clint Broden(4)
Attorney at Law

Mr. Frank Rubino(5)
Attorney at Law

Mr. Mike Deguerin(6)
Attorney at Law

Mr. Guy Womack(7)
Attorney at Law

Mr. Dan Wannamaker (10)
Attorney at Law

Mr. Richard Esper (11)
Attorney at Law

Mr. G.S. Montalvo (13)
Attorney at Law

Mr. Robert Harris (14)
Attorney at Law

Mr. Brent Mayr (18)
Attorney at Law

Mr. Frank Ivy (19)
Attorney at Law


DOUGLAS W. GARDNER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | **A-12-CR-210SS** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MIGUEL ANGEL TREVINO et. al** | § | |
| | § | |
| **Defendants.** | § | |

## O R D E R

CAME ON to be considered the Defendants' Motions in Limine for Bruton Objection (Documents 352 & 355) and the Court having considered said motions and evidence hereby DENIES the said Motions.

SIGNED, this _____ day of _____, 2013.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE