IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VERSUS | § § | A-12-CR-210(6)-DEW |
| FRANCISCO ANTONIO COLORADO CESSA (6); | § § § | |

## REASONS FOR RULING

On November 27, 2015—the Friday before jury selection and trial were set to begin on Monday, November 30, 2015—defendant Francisco Antonio Colorado Cessa, through counsel, filed a "Motion to Dismiss Second Superseding Indictment for Prosecutorial Misconduct Before the Grand Jury." [Doc. #938].[1] At defendant's request, the motion was placed under seal. [Docs. #937, 941]. The court denied the motion on Saturday, November 28, 2015, with written reasons to follow. [Doc. #942]. *Id.* Those reasons are set forth below.

Defendant argued that Mr. Douglas Gardner, an Assistant United States Attorney, committed misconduct when he presented the second superseding indictment to the grand jury on August 4, 2015.[2] [Doc. #938]. Defendant claimed that Mr. Gardner "(1) functioned as an unsworn witness, imparting extensive purportedly factual information to the grand jurors; (2) improperly informed the

---

[1] The government responded to defendant's motion via email. [Doc. #940-1].

[2] Defendant was originally convicted on one count of conspiracy to launder monetary instruments on May 9, 2013, after a three week jury trial. [Doc. #555]. On June 5, 2015, the Fifth Circuit overturned defendant's conviction and remanded for a new trial. [Doc. #841]. The government obtained the Second Superseding Indictment after the remand. [Doc. #859].

grand jury that a prior grand jury had indicted Colorado and that he had been convicted at trial; and (3) presented prejudicial and misleading information about the Fifth Circuit appeal and other aspects of the case." *Id.* at 4.[3]

Defendant first claimed that Mr. Gardner, in his opening statement, improperly drew the grand jury's attention to the previous indictments returned against defendant, defendant's prior conviction, the fact that other co-conspirators had been found guilty, and the fact that the case was back on remand from the Fifth Circuit. *Id.* at 5–6. Furthermore, defendant complained that Mr. Gardner did not accurately describe the history of the case and mis-characterized the Fifth Circuit's opinion. *Id.* at 7–8. Next, defendant attacked the manner in which Mr. Gardner questioned IRS Agent Steve Pennington, the sole witness who testified before the grand jury. *Id.* at 8–12. The defendant claimed that Mr. Gardner "made unsworn assertions of fact thinly disguised as questions to the agent." *Id.* at 8. Stated differently, defendant claimed that Mr. Gardner, in asking leading questions of Special Agent Pennington, was the one testifying. Defendant pointed to several examples in which Mr. Gardner would make a statement and then ask Agent Pennington things such as: "is that a fair statement?" or "is that a fair assessment?" or "do you recall that?" *Id.* at 8-12. The defendant also highlighted several instances in which Mr. Gardner answered questions from the grand jurors

---

[3] Additionally, defendant claimed that the transcript of the grand jury proceedings was incomplete because it only showed that one witness testified and does not specify how long the grand jury deliberated. [Doc. # 938, p. 12]. Defendant thus alternatively sought an evidentiary to determine: "(1) whether anyone other than the AUSA and Agent Pennington testified before the grand jury that returned the second superseding indictment; and (2) how long the grand jury deliberated before returning the second superseding indictment." *Id.* at n. 2. The defense also requested "that a complete transcript of the grand jury proceeding that led to the second superseding indictment be provided to the defense and made part of the record." *Id.* The court denied defendant this alternative relief and reaffirms that decision here. The transcript was certified as true, correct, and complete by the court reporter, [Doc. #938-1, p. 87], and there was no reason to allow a fishing expedition into the grand jury's deliberations on the eve of trial.

directly. *Id.* at 8, 10.

In response, the government pointed out that, in the transcript of the grand jury proceedings, "the members of the grand jury are cautioned on at least four separate occasions of their duty to consider probable cause or the option to no-bill any individual defendant." [Doc. #940-1]. Thus, the government argued that "[i]f the defendant believes his cited comments influenced the grand jury, then, by extension he cannot parse them from the other comments which must also have equally influenced the grand jury." *Id.*

In *Bank of Nova Scotia v. United States*, the Supreme Court held that prosecutorial misconduct before a grand jury mandates dismissal of an indictment "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." 487 U.S. 250, 256 (1988) (citation omitted). Here, the court did not find this standard satisfied, for the simple reason that any misconduct Mr. Gardner's part was cured by the other statements he made to the grand jurors. Specifically, Mr. Gardner explained to the grand jurors that they were charged with establishing whether probable cause existed for the charges contained in the second superseding indictment, and he also instructed them that they could refuse to indict any person named therein. Accordingly, the court did not find that the extreme measure of dismissing the second superseding indictment was appropriate or justifiable.

A review of the transcript makes clear that Mr. Gardner did not take as heavy-handed approach as defendant claimed he did. For example, at the conclusion of Mr. Gardner's opening statement—which defendant hyperbolically characterized as containing "an astonishing range of misconduct," [Doc. #938, p. 6]—he told the grand jurors that

your job is still to look at this case fresh--even though the jury has found them guilty, look at this thing as fresh, is your role as a Grand Jury. That's sort of the procedural and the legal requirement that requires me to present it to you for another look.

[Doc. #938-1, p. 4, ll. 1–6]. Later, Mr. Gardner responded to a grand juror's question regarding whether a vote in favor of finding probable cause applied to all persons named in count one of the second superseding indictment, or each person individually. *Id.* at 83. Mr. Gardner stated that:

> Well, you vote on each person individually as to that one count. Does that make sense? So you may sit there and say, "Hey, I believe Miguel, Omar, Colorado, and Diaz are all guilty of conspiracy, but I don't believe that Quintero is a participant in this conspiracy." *If that's your choice as a grand jury, let me know, and I'll modify the indictment and take him out of there, and, therefore, Mr. Quintero will be no-billed as a defendant.* But if you have questions on that as you deliberate, feel free to call us back in, and we'll be more than happy to discuss the evidence against any particular defendant.
>
> Yes, it's one count, but you have to do one count against each defendant. Much like a trial jury, they have -- they have a specific jury form as to each defendant, so each defendant must be guilty, for trial purposes, beyond a reasonable doubt. *Similarly, you must find each defendant by probable cause probably was involved in this conspiracy.* Does that make sense? Did I answer your question?

*Id.* at 83–84. (emphasis added). The following exchange was also illuminating:

> GRAND JURY MEMBER: So is the first indictment, is it no longer valid then?
>
> MR. GARDNER: Not necessarily. They're all sort of valid until I dismiss or you're convicted. So this one I'm expanding the date range and keeping some of the defendants who are still fugitives, but not adding any charges. So the charges are really the same in all three indictments. It's the exact same charge. Just the change in the date range and one other minor change. It's more of a legal function than a practical function. I don't know if I answered your question. Does that make sense?
>
> GRAND JURY MEMBER: I think so.
>
> MR. GARDNER: Basically it's the third indictment that a Grand Jury has seen in this case. Each one has to be considered independently. In this case, I'm expanding it. The old indictment, I believe, said 2008 until 2012. This one says 2004 until 2012. None of the players have changed, nor has the charge been multiplied or--the penalty range is the same in all three indictments. Not that you need to consider that. So basically

it's more--I don't want to say technical changes, but that's essentially what I'm doing. For me it's a technical change. *For you, you need to consider probable cause.*

*Id.* at 84–85 (emphasis added).

As is readily apparent from the foregoing statements, Mr. Gardner repeatedly emphasized to the grand jury that they were more than a rubber stamp. As such, the court readily concluded that defendant's motion to dismiss the second superseding indictment was baseless and denied it accordingly.

**THUS DONE AND SIGNED**, this ___16___ day of ___December___ 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE